**UNITED STATES DISTRICT COURT**                **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:14-CR-28 (1) |
| | § | |
| DAVID LEE BROWN | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant David Lee Brown's ("Brown") *pro se* Motion for Compassionate Release (#1010), wherein Brown seeks a reduction of his sentence based on his family circumstances, rehabilitation, and the First Step Act.  The Government filed a response in opposition to Brown's motion for compassionate release (#1016).  United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny the motion.   Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On February 13, 2014, a federal grand jury in the Eastern District of Texas returned a single-count Indictment charging Brown and 22 codefendants in Count 1 with Conspiracy to Possess with the Intent to Manufacture and Distribute Methamphetamine, in violation of 21 U.S.C. § 846.  On May 20, 2015, Brown pleaded guilty to the offense charged in the Indictment pursuant to a written plea agreement.  Subsequently, on November 10, 2015, the court sentenced Brown to a guideline sentence of life imprisonment, to run consecutively to any sentence imposed for Theft of Property, Docket No. F1476680 in the 203rd District Court of Dallas County, Texas. On July 2, 2018, the court reduced Brown's sentence to 240 months, to be followed by a 5-year

term of supervised release.  Brown is currently housed at United States Penitentiary Tucson, located in Tucson, Arizona.  His projected release date is April 3, 2031.

On May 24, 2019, Brown filed his initial motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) (#954), in which he asked the court to grant him a two-point reduction based on Amendment 782.  On May 31, 2019, the court denied Brown's motion (#955).  The court explained:  "Defendant's original Guideline computations were calculated using the 2015 United States Sentencing Guideline Manual; therefore, he has already received the benefit of amendment 782 and is not eligible for a reduction."  In the instant motion, Brown seeks a reduction of his sentence claiming that (1) his rehabilitation and desire to mentor his children constitute extraordinary and compelling circumstances warranting relief; and (2) because his sentencing range has been subsequently lowered under the First Step Act, his sentence should be reduced from 20 years to 15 years.

## II.   Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

2

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues.");

3

*Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on December 14, 2021, Brown submitted a request for compassionate release to the warden of his facility at the time, Federal Correctional Institution Danbury, located in Danbury,

Connecticut.  On January 6, 2022, Warden T. Pullen denied Brown's request because the "Compassionate Release Program is not the correct forum to address judicial determinations or proceedings."  The Government concedes that Brown has exhausted his administrative remedies. Nevertheless, although Brown may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

B.      Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria.  *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).   First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Id.*; *accord United States*

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

5

*v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. Until recently, the Commission has been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). On August 4, 2022, the Senate confirmed seven members to the Commission. Although the Commission now has a quorum for the first time in over three years, it has not promulgated any additional policy statements or amendments to the guidelines.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'"  *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

1.   <u>Family Circumstances</u>

Brown contends that his family circumstances present extraordinary and compelling reasons that justify compassionate release.   As explained above, although the court is not bound by § 1B1.13 or the commentary thereto, the court views the commentary as informative of its analysis as to what reasons may be sufficiently extraordinary and compelling to merit compassionate release. *See Shkambi*, 993 F.3d at 392; *see also Thompson*, 984 F.3d at 433; *Rivas*, 833 F. App'x at 558.   The U.S.S.G. acknowledge that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, under the following conditions:   (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."   U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii).   While the U.S.S.G. do not provide a definition of "incapacitation," "[f]or guidance [on what constitutes] 'incapacitation,' courts look to the BOP's non-binding Program Statement for processing compassionate release requests." *United States v. White*, No. CR16-40, 2021 WL 1721016, at *4 (E.D. La. Apr. 30, 2021); *United States v. Bolden*, No. 16-320, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (consulting the BOP's relevant Program Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (same); *United States v. Collins*, No. 15-10188, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by the BOP, it "provide[s] guidance for courts as well").

Brown does not claim that the caregivers of his minor children are deceased or incapacitated.   Instead, Brown asserts that he "hopes that he will be able to mentor his children

in contrast to the way that his own father failed to do as Brown was a child," which is his "primary motivation" for filing the instant motion.  Brown states in his motion that he has three sons, ages 13, 15, and 17, who are all full-time students.  According to his Presentence Investigation Report ("PSR"), prepared on July 29, 2015, and revised on October 13, 2015, and November 4, 2015, Brown fathered each child with a different woman, and he is no longer together with any of his children's mothers.  His three sons live with and are cared for by their respective mothers, with whom he claims to have "very good, open communication."

Brown makes no claim that his minor children are in need of a caregiver.  Rather, he merely expresses a desire to resume his duties as a father to his children, to mentor his children, and to serve as a role model for them.  In this instance, Brown's desire to support his children and to be a good role model does not constitute an extraordinary and compelling reason warranting compassionate release.  *See United States v. Degante*, No. 4:17-CR-075, 2022 WL 2813716, at *5 (E.D. Tex. July 18, 2022) (holding that the defendant's "wish to provide love and financial support for his children does not amount to 'extraordinary and compelling' reasons"); *United States v. Dewberry*, No. 11-CR-40078-06-JAR, 2022 WL 2528108, at *4 (D. Kan. July 7, 2022) (holding that the fact that the defendant "loves and misses his daughters very much" does not constitute extraordinary and compelling circumstances); *United States v. Silverlight*, No. 4:12-CR-201-YGR, 2021 WL 1736864, at *3 (N.D. Cal. May 3, 2021) (holding that defendant's arguments for "release to care for members of her family including her minor children do not rise to the level of 'extraordinary and compelling' circumstances warranting reduction of her sentence"); *United States v. Williamson*, No. 1:06-CR-474-1, 2021 WL 309067, at *5 (M.D.N.C. Jan. 29, 2021) ("It is commendable that [the defendant's] family's wellbeing is forefront in his mind and that it may

deter him from future criminal conduct.  However, their welfare was an insufficient deterrent at the time of the instant offense, and it is not the Court's obligation to lessen the burden that [the defendant] placed on them in the first place."), *aff'd*, No. 21-7151, 2022 WL 227511 (4th Cir. Jan. 25, 2022); *United States v. Francisco-Ovalle*, No. 18-CR-526-AJN, 2021 WL 123366, at *3 (S.D.N.Y. Jan. 13, 2021) ("Defendant's desire to provide financial support for his family, while . . . admirable, applies broadly to incarcerated persons and does not in itself provide extraordinary and compelling reasons justifying release."); *United States v. Walker*, No. 1:18-CR-167-HSO-JCG-1, 2020 WL 7237263, at *5 (S.D. Miss. Nov. 17, 2020) ("Although the Court is sympathetic to Defendant's desire to obtain custody of his daughter, he has not shown that his family circumstance amounts to an extraordinary or compelling reason justifying his release."), *aff'd*, 856 F. App'x 521 (5th Cir. 2021).  Like the defendant in *McMurray*, Brown "committed a serious offense that carried a significant sentence.  A consequence of that sentence is not being available to support family members as he desires."  *United States v. McMurray*, No. 3:12-CR-360-HZ-1, 2021 WL 4473403, at *2 (D. Or. Sept. 29, 2021).

### 2.   Rehabilitation

Brown further maintains that his post-sentence rehabilitation, evidenced by the courses he has taken, the programs he has completed, and his withdrawal from the Aryan Brotherhood of Texas, establishes extraordinary and compelling reasons for compassionate release.   While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may

10

consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). Nevertheless, Probation reports that, on October 22, 2016, "Brown assaulted another inmate and caused serious injury."

Thus, although Brown lists a number of commendable achievements and laudable goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *accord United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Ore. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that

they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).   Similarly, the court commends Brown for renouncing his gang and hopes that he will continue on the path to rehabilitation; however, the court declines to exercise its discretionary authority under § 3582 at this time based on either his rehabilitation efforts or his leaving the Aryan Brotherhood.  *See Lewis*, 2021 WL 4519795, at *3.

   3. <u>First Step Act</u>

   Brown further asserts that the court should reduce his sentence from 20 years to 15 years due to the First Step Act.  Specifically, Brown claims that his sentence should be reduced because he should receive the benefit of the safety valve provision as amended by the § 402 of First Step Act.  In requesting such relief, however, Brown conflates the First Step Act's safety valve provision with § 851 enhancements for repeat offenders under § 401 of the First Step Act.  In any event, neither theory warrants a reduction of Brown's sentence.

   a. <u>§ 851 Enhancements</u>

   On December 21, 2018, the President signed the First Step Act into law.  Section 401 of the Act, in part, reduces and restricts enhanced mandatory minimum sentences based on prior drug convictions, which are commonly referred to as "851 enhancements."  Pub. L. 115-391, § 401, 132 Stat. 5194, 5220-21 (codified as amended at 21 U.S.C. §§ 802, 841, 960); *see United States v. Declouet*, No. CR 07-198, 2020 WL 708137, at *2 (E.D. La. Feb. 12, 2020).  The term "851

enhancement" derives from 21 U.S.C. § 851, which establishes the procedures necessary for the Government to prove a prior drug conviction for purposes of sentence enhancement.  *See United States v. Banks*, 770 F.3d 346, 350 (5th Cir. 2014).  The procedures set forth in § 851 were not modified by the First Step Act.  Section 851(a) requires the Government, before trial or the entry of a guilty plea, to file a notice in writing of any previous convictions to be relied upon with the court and to serve a copy on the defendant.

Section 401 reduces the minimum sentences which must be imposed when § 851 enhancements apply under 21 U.S.C. §§ 841(b)(1)(A) and 960(b)(1).  Section 401, states in pertinent part:

> (A)(2)(i) by striking "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years" and inserting the following:  "If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years"; and
>
> (ii) by striking "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release" and inserting the following: "after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years"; and
>
> * * *
>
> (c) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

First Step Act of 2018, Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21.

Section 401 not only reduced the mandatory minimum penalties, but also changed the conditions under which they apply under 21 U.S.C. §§ 841(b)(1)(A), (B), and 960(b)(1), (2).[4] Prior to the First Step Act, enhanced mandatory minimum sentences were triggered upon the showing of a prior conviction for a "felony drug offense." Now, the defendant's prior conviction must meet the new definition of "serious drug felony" or "serious violent felony."[5] *See* Pub. L. 115-391, § 401, 132 Stat. 5194, 5220-21.

To the extent Brown seeks a reduction under § 401 of the First Step Act, he is not entitled to such relief. Indeed, according to his PSR, Brown did not receive a § 851 enhancement. Moreover, Brown was ineligible for such an enhancement because, before the entry of his guilty plea, the Government did not file a notice that it intended to rely on any of his previous convictions for a § 851 enhancement. Thus, a reduction of Brown's sentence under § 401 is not warranted.

---

[4] Sections 841(b)(1)(C) and (D) were not amended.

[5] "Serious drug felony" and "Serious violent felony" are defined in 21 U.S.C. § 802(57) and (58), respectively. A "serious drug felony" means an offense prohibited by 18 U.S.C. § 924(e)(2)(A) for which the defendant served a term of imprisonment of more than 12 months and was released from any term of imprisonment within 15 years of the instant offense. Section 924(e)(2)(A) defines "serious drug offense" as an offense under the Controlled Substances Act (21 U.S.C. § 801 *et seq*.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq*.), Chapter 705 of Title 46 (Maritime Law Enforcement) or under state law, involving manufacturing, distributing, or possessing with intent to distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment is 10 years or more. "Serious violent felony" means an offense for which the defendant served a term of imprisonment of more than 12 months that is either a violation of 18 U.S.C. § 3559(c)(2) or 18 U.S.C. § 113 (assaults within maritime or territorial jurisdiction). Section 3559(c)(2)(F) defines "serious violent felony" as enumerated offenses including murder, certain sex offenses, kidnapping, extortion, arson, and certain firearms offenses, among others, or as any offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense" and is punishable by a maximum term of imprisonment of 10 years or more.

14

b.     Safety Valve

To the extent Brown seeks relief under the safety valve provision, that request is also denied.  While the First Step Act broadened the criminal history requirements for a defendant to be eligible for the safety valve provision, these amendments apply only to a conviction entered on or after December 21, 2018.  Pub. L. No. 115-391, § 402(b), 132 Stat. 5194, 5221 (2018).  Because Brown was convicted in 2015, the safety valve provision does not apply to him.

Moreover, the amendment set forth certain prerequisites for relief under the safety valve provision—including the following conditions relevant here:  (1) the defendant must not have (A) "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense"; or (B) "a prior 3-point offense"; and (2) the defendant must not be "an organizer, leader, manager, or supervisor of others in the offense."  18 U.S.C. § 3553(f)(1), (4).  Here, Brown's criminal history exceeds that which is permitted under the safety valve, as amended.  He has 6 criminal history points, as well as two prior 3-point offenses.  Brown's first 3-point offense involves his 1998 conviction for unlawful possession of a controlled substance with intent to deliver (methamphetamine).  His second 3-point offense entails his 2009 conviction for forgery of a financial instrument.  Moreover, during Brown's sentencing, the court found that he served as an organizer/leader of others in relation to the offense and enhanced his sentence accordingly.  Consequently, even if the First Step Act's amendment to the safety valve provision were retroactive—which it is not—Brown would still be ineligible for relief.  Accordingly, the court declines to reduce Brown's sentence based on the safety valve provision.

C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Brown's offense of conviction stems from his leadership of a large scale, drug-trafficking conspiracy involving at least 22 other conspirators and the distribution of between 15 and 45 kilograms of a mixture or substance containing a detectable amount of methamphetamine or between 1.5 and 4.5 kilograms of methamphetamine (actual), which was imported from Mexico.  Brown served as the leader/organizer of the drug-trafficking organization and supplied his coconspirators with kilogram quantities of methamphetamine from various sources for distribution to others in the Eastern and Northern Districts of Texas for a two-year period.

During the investigation, the Drug Enforcement Administration ("DEA") identified a multi-kilogram methamphetamine distribution organization in the Rockwall, Texas, area, headed by Brown.  Brown lived in Rowlett, Texas, with his girlfriend, Peggy White, who also sold methamphetamine.  On October 10, 2013, a confidential source ("CS") went to Brown's residence to meet with Brown and his coconspirator, Alejandro Lopez ("Lopez"), who supplied Brown with methamphetamine he obtained from a drug cartel in Tijuana, Mexico.  While there, the CS observed Lopez carrying a crate containing 25 kilograms of methamphetamine.  The CS reported

to the DEA that Brown received a shipment of methamphetamine every Thursday at his residence and sold approximately 65 kilograms of methamphetamine per week.  On December 3, 2013, DEA agents conducted a trash run at Brown's residence.  A search of the trash revealed various receipts, a digital scale, Ziploc bags, credit cards, and a bag containing .21 grams of methamphetamine.

On March 6, 2014, a second CS stated that approximately one year earlier, he was visiting Cory Barker ("Barker"), a coconspirator.  During the visit, Brown arrived with approximately 3 pounds of methamphetamine and asked Barker and the CS if they needed any.  The CS also reported that on another occasion, he or she was visiting Barker, and Brown brought one-half pound of methamphetamine.  The CS told the DEA that he or she went to Brown's residence on three occasions and saw a safe where Brown stored a large amount of United States currency and .25 pounds of methamphetamine.  The CS further stated that Brown had his coconspirators transport methamphetamine for him multiple times.  On March 19, 2014, DEA agents conducted a search of Brown's residence and found marijuana, hydrocodone pills, methamphetamine, a white crystalline substance, two cellular phones, a scale, and a computer in his bedroom.  In addition, Brown maintained a separate premises for the purpose of manufacturing and distributing methamphetamine.

Upon his arrest, Brown attempted to obstruct justice.  Specifically, while Brown was in the custody of the Rockwall County, Texas, jail, he made calls to his mother, Linda Wilson, telling her to move property, recover assets, and get rid of evidence.  Furthermore, he gave her a script of what she should tell law enforcement.  Brown also called his brother and instructed him

to clean up evidence so that no one would be charged, as captured in a recorded telephone call from jail.

Moreover, Brown has a significant criminal history, which includes prior convictions for minor in possession of alcohol, unlawful possession of a controlled substance with intent to deliver (methamphetamine), obstructing a highway, failure to identify as a fugitive from justice, and forgery of a financial instrument (2). He also has arrests for possession of a controlled substance with intent to deliver, driving while license suspended (2), forgery of a financial instrument, and aggravated assault with a deadly weapon. In addition, Brown previously violated the conditions of his release on probation and parole, and his probation was revoked on two occasions. In *Boyd*, the defendant had a similar history of violating probation, including committing the offense of conviction while on probation. 2021 WL 5094903, at *3. The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted." *Id*. This court shares the same concerns in reference to Brown. Moreover, Brown's PSR reflects that he has a history of poly-substance abuse, including the use of alcohol, marijuana, cocaine, acid, hydrocodone, and methamphetamine. He cited methamphetamine as his drug of choice and stated that he used it on a daily basis from ages 25 to 41, when he was arrested for the instant offense. Indeed, Brown reported to Probation that, since age 35, he had snorted a gram of methamphetamine per day. In short, Brown's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021).

18

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022).  Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances.  *Chambliss*, 948 F.3d at 693-94; *accord Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the defendant's no longer being subject to the career offender enhancement when district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal").  In view of the nature and circumstances of Brown's offense of conviction, his criminal history, and his history of substance abuse, the court cannot conclude that Brown's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

Regarding Brown's history of drug abuse, courts are precluded from "lengthening a prison term in order to promote a criminal defendant's rehabilitation," but in the present case, the court is deciding whether to reduce, not extend, a sentence. *Tapia v. United States*, 564 U.S. 319, 321 (2011); *see Chambliss,* 948 F.3d at 694.  Here, Brown has a history of abusing marijuana, cocaine, acid, hydrocodone, and methamphetamine.  Therefore, releasing Brown may facilitate his drug abuse, as he would gain unfettered access to over-the-counter medications and illegal drugs outside the BOP.

19

In addition, granting Brown compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.*; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F. 4th 1097, 1100 (5th Cir. 2022). In the instant case, releasing Brown after he has served only 108 months (or approximately 46%) of his 240-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Brown's track record is similarly a poor one. In this instance, there is no reason to believe that Brown would not revert

to his prior drug-dealing and drug-abusing behavior as well as engaging in other criminal activities if released from prison at this time.

IV.    Conclusion

In accordance with the foregoing analysis, Brown's *pro se* Motion for Compassionate Release (#1010) is DENIED.

SIGNED at Beaumont, Texas, this 9th day of August, 2022.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE